**VALLI KANE & VAGNINI LLP**
600 OLD COUNTRY ROAD, SUITE 519
GARDEN CITY, NEW YORK 11530
(516) 203-7180

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MARY MCLOUGHLIN,

    Plaintiff

  -against-

NEWS AMERICA INCORPORATED
d/b/a NEW YORK POST, DAVID
RENTAS, aider and abettor,
    Defendants.
-----------------------------------------------------X

COMPLAINT

**CV-10 0268**

JURY TRIAL DEMANDED

Index No.:

  Plaintiff, by her attorneys VALLI KANE & VAGNINI LLP, brings this action for damages and other legal and equitable relief from the Defendants' violation of the laws prohibiting discrimination based on age, gender and in retaliation for complaints about this discrimination, stating the following as Plaintiff's claims against the News America Incorporated d/b/a New York Post ("Post") and David Rentas ("Rentas") (collectively "Defendants"):

### INTRODUCTION

  1. This is an action brought by Plaintiff challenging acts committed by Defendants amounting to discrimination based on age, gender and retaliation. Defendant Post's acts of discrimination are in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA") and the New York City Administrative Code Section 8-101 to 131, et seq. ("City Human Rights Law").

Defendants' acts of discrimination are in violation of the New York State Human Rights Law, Executive Law § 290 et. seq. ("State Human Rights Law");

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; the ADEA and (iii) under 42 U.S.C. § 2000e, et seq., as amended.

3. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## PARTIES

5. Plaintiff Mary McLoughlin is a female and at the time of this filing is fifty-five years old. She resides in Westbury, New York.

6. Defendant New York Post has its principle place of business at 1211 Avenue of the Americas, New York, New York.

7. Defendant David Rentas maintains his principle place of business in New York, New York and is an aider and abettor under the New York State Human Rights Law. Defendant Rentas aided and abetted the discriminatory actions taken against Plaintiff.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. All conditions precedent to Plaintiff's rights to commence a civil action in accordance with the provisions of 42 U.S.C. § 2000e were satisfied. Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission, Charge No. 520-2009-02694, on or about April 7, 2009. Plaintiff received Notice of Right to Sue dated January 15, 2010.

## STATEMENT OF THE CLAIM

### Hostility and Harassment Towards Ms. McLoughlin

9. Ms. McLoughlin has worked at the New York Post for more than thirty three years, since 1976, as a photographer. She has had a long and accomplished career covering Long Island for the Post for over thirty years. In that time there was never any issue as to whether her job was completed in a satisfactory fashion.

10. From the tragedy at Three Mile Island to Florida's pivotal hanging chads in the 2000 Presidential Election, from the military test bombing in Vieques, Puerto Rico to the murder of Giovanni Versace, from the heart-wrenching story of little Elian Gonzalez, to the scandal of Jessica Hahn, Ms. McLoughlin has been on the scene, capturing the stories of our time.

11. After the New York Post Bankruptcy in 1993, Ms. McLoughlin was one of only five photographers hired back. She has been at the New York Post longer than any other employee in the Photo Department. She has an impeccable reputation in the business and has performed her

duties with professionalism and pride. She has never refused an assignment and has never received any warning, either verbal or written, prior to recent events. These recent events were brought on by the Post's discrimination against Ms. McLoughlin, an older woman whose body has sustained injury over a lifetime of physically demanding work -- injury that the Post exploited to discriminate against her and force her out of her job.

12. Ms. McLoughlin was subjected to hostility and harassment on a near daily basis from June of 2008 until the present. It began not long after Photo Editor, David Rentas, had a conversation with Ms. McLoughlin about her age and the limitations that her age placed on her.

13. For thirty-three years Ms. McLoughlin would follow the Post's instructions in finding news-worthy photographs which have been used in the Post's pages during that time. For thirty-three years she was an exemplary employee with no problems. Indeed she has a superb record and reputation in the industry.

14. During her employment she traveled willingly and frequently for the Post and never turned down any out of town assignment. However, Ms. McLoughlin was diagnosed with cancer at age 50 and had not been asked to travel since then.

15. In or around June of 2008, Ms. McLouglin and her supervisor Mr. Rentas, took time to talk about her career and what she was doing.

16. Ms. McLoughlin had just taken a brief leave to recover from an injury she sustained on the job and the conversation specifically related to the limitations that she had due to her age. At the time Mr. Rentas stated that she should "take it easy" and not get hurt again.

17. He also told her that they know that she is "getting older" and that they did not want her going out on disability. It soon became apparent that Mr. Rentas' "sympathy" was nothing more than a ruse, as he was setting her up for harassment and hostility meant to force her into early retirement.

18. On August 5, 2008, John Gotti Jr. was arrested from his Long Island home and taken to the FBI's offices.

19. It was 6 a.m. when the story broke and Ms. McLoughlin was naturally home sleeping. When Jim Alcorn at the Post's Photo Desk became aware of the breaking story, he did not call Ms. McLoughlin but instead sent a freelance photographer to the home of John Gotti Jr.

20. Ms. McLoughlin, whose shift began at 9 A.M., answered her phone at 7:30 A.M. when Mr. Alcorn called to ask her to start working immediately by going to the Long Island FBI offices. Mr. Alcorn remarked that he did not know where the offices were located, much less that there were FBI offices on Long Island. Ms. McLoughlin knew where the offices were and raced from her home to try to get there in time, but it was too late, Mr. Gotti had already been removed.

21. When the editors became enraged at this failure to obtain a photograph and threatened repercussions, Mr. Alcorn, along with his superiors, Mr. Rentas and Mr. David Boyle, the Executive Photo Editor, blamed Ms. McLoughlin for not having predicted this occurrence. The response was a barrage of screaming and cursing which exemplified the atmosphere of sexism and ageism that the Post fosters. Despite the fact that Ms. McLoughlin was in no way responsible for the failure to obtain the story she was subjected to this offensive behavior.

22. This irrational response came despite the fact that Mr. Alcorn failed to call her in a timely manner. It was clear from the onset that this was going to be used as an excuse to force Ms. McLoughlin into retirement.

23. Rather than acknowledge that the Post's office had made the mistake in sending a freelance photographer to the wrong scene prior to contacting Ms. McLoughlin, the Post's male supervisors chose to blame the entire mishap on their older, female photographer. They screamed and cursed accusations attacking Ms. McLoughlin.

24. This was not the end of their harassment, however, as they escalated the situation by sending Ms. McLoughlin to Florida to seek out a picture of Mr. Gotti. After making her own arrangements, Ms. McLoughlin successfully completed the trip and found out that Mr. Gotti had not, in fact, been sent to Florida, despite what the Post's "sources" indicated.

25. Rather than allow her to return home, Ms. McLoughlin was then reassigned to a poorly prepared assignment of finding an alleged spouse of Yankee player Hideki Matsui. This did not materialize as no such individual has been found to exist, thus making Ms. McLoughlin's trip to Florida in its entirety a complete waste of time.

26. This came no more than a few months after having a discussion with Mr. Rentas wherein Ms. McLoughlin stated that at her age and with her various physical ailments it was very difficult to perform an assignment such as this one, where she must carry her very heavy equipment on planes, throughout airports and the like. She was not even accompanied by the customary reporter while she went on this wild goose chase. After this the hostility became unbearable.

27. When Ms. McLoughlin returned from her trip to Florida, Mr. Rentas warned her that "you should have a bag packed at all times because you're going to be traveling a lot."

28. Ms. McLoughlin protested by citing their earlier conversation relating to her age, during which Mr. Rentas had ordered her to "take it easy" because they "didn't want [her] to go out on disability." Further, Mr. Rentas was aware that Ms. McLoughlin was a cancer survivor, had recently had knee surgery and had also recently sustained on the job back injuries, which she has previously discussed with Mr. Rentas. Mr. Rentas replied: "you'll have to come in and we'll discuss it." No discussion was had and Mr. Rentas began to further disrespect Ms. McLoughlin, leading to the creation of a hostile work environment for her.

29. For the first time in her thirty-three year career, Ms. McLoughlin was asked to do things far outside her job description. Along with her regular job of photographing Long Island news and feature stories she was given additional tasks: she was told that she must act like a reporter and find exclusive Long Island stories to compete with the City Desk. She was further ordered by Mr. Rentas to keep any exclusives a secret from reporters – so the Photo desk could take credit.

30. Never in her entire career had she been ordered to compete with her own co-workers. She was also told to call police stations at 2:00 A.M. every night to see if there were any stories. She protested that the overnight staffs of the Photo Desk and the City Desk staff, who were paid to be awake and working the graveyard shift, could easily do this. Regardless, Ms. McLoughlin did call and check for stories on a regular basis.

31. Upon information and belief, none of the younger or male photographers were asked to perform such onerous tasks. The treatment continued as she received phone calls from Mr.

Rentas which were only meant to harass her and did not contain any substantive information. He regularly shouted at her using profanity.

32. Ms. McLoughlin's position has further been altered and additional hostility has been exhibited towards her. While she has worked feverishly to adhere to the new requirements placed upon her, it is clear that her younger counterparts are favored by Mr. Rentas and she is being asked to do more than others while being treated in a disparate way due to her age and gender.

33. Rather than prevent such disparate treatment and harassment, the Post has turned a blind eye to the hostility which Ms. McLoughlin has encountered from her supervisors. Despite having full knowledge of the occurrences, the Post has condoned these actions and encouraged further discrimination.

34. In one instance, Ms. McLoughlin suggested a story about a female jockey whose father had also been a famous jockey. This story never ran. Later Mr. Alcorn called Ms. McLoughlin and asked for information about a "Hot" female jockey who he'd like to contact. He said that she is from Brazil and was "just the way I like them." Neither story was ultimately printed by the Post. Later, the New York Times on their front page used the same idea that Ms. McLoughlin had suggested the Post do.

35. Mr. Rentas frequently uses profanity and demeaning language when dealing with Ms. McLoughlin. Mr. Rentas also yells consistently at Ms. McLoughlin during every conversation he has had with her since these incidents. Mr. Rentas's actions are meant to harass Ms. McLoughlin and are clearly being done in order to force her into retirement. Younger women and men are not treated this way.

36. In January of 2009, Mr. Rentas issued Ms. McLoughlin the first warning that she ever received while working for the Post, it was labeled as a "final warning" and threatened her job. The single incident that led to this "final warning" was the use of one profane word uttered by Ms. McLoughlin during a tirade by Mr. Rentas during which he belittled and berated Ms. McLoughlin because she had allegedly failed to produce leads.

37. The Post ignored Mr. Rentas's behavior which was a typical response on their part.

38. The Post also ignored the large number of exclusive leads which Ms. McLoughlin had generated and produced because she is older and a woman. She offered numerous stories but her emails were ignored and Mr. Rentas never responded. The stories which she uncovered included an exclusive story about a major Ponzi scheme on Long Island that became the biggest story on the Island for weeks and drew national attention.

39. The Post ignored this and Mr. Rentas continued his shouting tirades and belittlement towards Ms. McLoughlin. The ignorance of her accomplishments and contributions was clearly due to her gender and age as is evidenced by the statements made by Mr. Rentas about her age as well as the environment which objectified women. Indeed, several other women have come forward claiming sexual harassment and objectification by the supervisors within the Post, almost all of whom are men.

40. Ms. McLoughlin has been harassed and hounded day after day for stories and ideas in a manner no one else has. This is not part of her position as a photographer nor is there any justification for these particular demands being made of her. However, ignoring the leads and what she was able to accomplish despite the fact that it was not part of her job leads to an inaccurate portrayal of the hard work and results which Ms. McLoughlin has produced.

41. In addition to being required to perform many more tasks than other photographers, Ms. McLoughlin has also been forced to tolerate the constant harassment and screaming by Mr. Rentas.

42. After finishing work in January of 2009, Ms. McLoughlin received a message and email from Mr. Rentas which demanded that she find three exclusive stories by the following afternoon. This task would be impossible for most reporters, much more for a photographer who was only now being required to do this extra work. When Mr. Rentas called Ms. McLoughlin she was broken down from the constant barrage of screaming and cursing to which Mr. Rentas regularly subjected her and thus she used a single profane word. The next contact Ms. McLoughlin had with Mr. Rentas was so he could issue a "final warning" relating to their previous conversation. This warning, the first Ms. McLoughlin had received in thirty-three years with the Post, indicated that she would be terminated at the next opportunity they found.

43. Not long after this Ms. McLoughlin took disability leave due to the emotional and physical damage which she had sustained. For the first time in her life she needed psychiatric help. The emotional and physical damage she has sustained because of Defendants' discrimination prevents her from working. Prior to these events and, indeed, for the vast majority of her entire career, the Post lauded Ms. McLoughlin as an exemplary employee.

44. Immediately following an evaluation which highlighted her age she was singled out, used as a scapegoat, labeled a problem employee and harassed to the point that she could no longer handle the constant harassment. At that point she used a single profane word which Mr. Rentas and Mr. Boyle have utilized repeatedly, to escalate the hostility and find a pretext to terminate her.

45. The Post has discriminated against Ms. McLoughlin on the basis of her age and gender and continues to level unnecessary and individualized requirements on her in an attempt to force her into resigning or finding a pre-textual reason for termination.

46. Ms. McLoughlin has been and continues to be on long term disability leave at the direction of her doctor because of the emotional damage she has sustained as a result of the hostility and harassment she was constantly exposed to as well as being the target of insults and profanity at the hands of her supervisor on a daily basis and the Post's discriminatory practices.

### Atmosphere of Sexism and Ageism

47. The discrimination which Ms. McLoughlin endured was the result of policies and practices employed at the Post.

48. The Post's atmosphere has been and remains one which regularly discriminates against older employees in favor of younger employees as well as encourages sexism and harassment of both women and older employees. Further, young women are given especial favor at the Post by supervisors who have objectified them. Young women are kept as long as they can be objectified and older women are mistreated, underappreciated and harassed. This atmosphere is both discriminatory against women and against older employees.

49. Mr. David Boyle, the Executive Photo Editor (a position he created for himself), hired what is widely considered a "harem" of young women to work in his office as executive assistants.

50. Typically, all of the newer hires are younger women. Mr. Boyle created new positions for a "Feature Photo Editor", "T.V. Photo Editor", "Real Estate Photo Editor", "Sunday

Feature Photo Editor" and a position for a personal assistant. All of these newly created jobs were filled by twenty-something year old women who have been used as models for the paper's photo shoots.

51. Prior to the New York Post's holiday parties, Mr. Boyle hires a make-up artist to make over what had come to be known as "David's Girls" or "David's Harem." He was very proud of these women and made sure that everyone could see him with these younger employees who he was permitted to hire and promote for no reason other than to objectify them.

52. When Ms. McLoughlin asked if his wife would be at the Christmas party one year, Mr. Boyle replied that he would never invite her to this party. This was because of his inappropriate behavior that he regularly exhibited during the course of these parties.

53. Mr. Boyle would dance provocatively with "David's Girls" all night, touching them with his hands and pelvis, while he danced with several of them at the same time, in a way that was both unprofessional and offensive to those who had to view this spectacle. This bumping and grinding included obscene acts which were entirely unprofessional and degrading to those women who were present.

54. Indeed, it was made very clear that these girls were there for the manager's enjoyment and if older women were lucky enough to maintain their jobs they were merely tolerated and mistreated until they could either retire or they could no longer take the harassment and hostility that permeated the workplace.

55. When one of "David's Harem" left for another job, he was often seen staring at her picture on his computer instead of doing work. He objectified his younger subordinates in this

way constantly and continues to do this. Mr. Boyle regularly goes drinking with these women and is often seen in inappropriate and lewd situations.

56. While older, female employees have often been asked to extend their work hours and increase their responsibilities due to the economy, Mr. Boyle is permitted to create positions just for his harem to stay employed. For a brief time Mr. Boyle took another job but soon after he returned. Prior to his exit, Mr. Boyle threw himself a party and had his harem dress like pirates. He of course was the captain of the ship. This only furthered the atmosphere of gender inequality and ageism.

57. While these young girls are favored for their youth and sexuality, Ms. McLoughlin and other older employees are disregarded and mistreated due to their age. Women are treated disparately from their male counter parts and men are routinely promoted into positions ahead of females who are better qualified. Further, older employees are not appreciated and often forced out. Their duties are then transferred to the remaining older employees while the young women in the office maintain their cushy jobs.

58. In one instance, Mr. Rentas told an older photographer that he was not doing a good job and management was not happy with his work. This was not true and there was no basis for these comments. Rather, they were made just to force him into retirement. Indeed, soon after this meeting he retired rather than remain in the hostile work environment maintained by the Post and its supervisors toward older workers.

59. Another older photographer was suffering from cancer. Mr. Boyle refused to hold back his harassment and constantly hounded him to produce more. Rather than understand that the photographer was suffering, he chose to increase the pressure. While younger employees are

never treated this way, older employees are regularly harassed to produce more than they have ever been required to produce. That photographer later died from cancer.

60. The sexual harassment that permeates the workplace includes comments and the general disparate treatment that all women and older individuals employed by the Post endure on a daily basis.

61. Indeed, because Ms. McLoughlin is a woman, her superiors consistently overly criticize her work while not recognizing the numerous positive contributions she has made to the paper's success. These successes are overshadowed by the male chauvinism which permits and encourages the hostility and harassment that Ms. McLoughlin has endured.

62. If not for the Post's policies that disparage older employees and women then Ms. McLoughlin's supervisor Mr. Rentas would not have been permitted to harass her on a regular basis and she would not have been emotionally damaged due to their unconscionable actions.

63. Due to the harassment and hostility which Ms. McLoughlin has been forced to endure she has been damaged emotionally, physically, equitably and economically. Based on the aforementioned facts, Ms. McLoughlin has been subjected to adverse employment actions based on her age and gender in direct violation of applicable state and federal statutes.

## CAUSES OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964, as amended;
42 U.S.C. § 2000e *et. seq.* and the Age Discrimination in Employment Act against Defendant Post**

64. The conduct alleged herein violates Title VII as Defendant has engaged in the practice of discrimination and retaliation against Plaintiff.

65. Plaintiff's requests for relief are set forth below.

### Violation of New York City Human Rights Law against Defendant Post

66. The conduct alleged herein violates the New York City Human Rights Law as Defendant has engaged in the practice of discrimination and retaliation against Plaintiff.

67. Plaintiff's requests for relief are set forth below.

### Violation of New York State Human Rights Law against Defendants

68. The conduct alleged herein violates the New York State Human Rights Law as Defendants have engaged in the practice of discrimination and retaliation against Plaintiff.

69. Plaintiff's requests for relief are set forth below.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a jury trial and judgment against Defendant as follows:

1. A judgment declaring that the practices complained of herein are unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act; the New York State Human Rights Law, Executive Law § 290 et. seq.; and the New York City Administrative Code Section 8-101 to 131, et seq.

2. Granting an order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

3. All damages which Plaintiff has sustained as a result of Defendants' conduct, including back pay, general and special damages for lost compensation and job benefits she would have received but for Defendants' discriminatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

4. Front pay to Plaintiff until such time as she can be placed in the same position she would now occupy but for Defendants' discriminatory practices;

5. Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless and/or intentional conduct;

6. Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

7. Pre-judgment and post-judgment interest, as provided by law; and

8. Granting Plaintiff such other and further relief as this Court finds necessary and proper.

Dated:   January 21, 2010

        Respectfully submitted,

        Valli Kane & Vagnini, LLP
        Attorneys for Plaintiff
        600 Old Country Road; Suite 519
        Garden City, New York 11530
        (516) 203-7180
        (516) 706-0248 (fax)

        By: _____
              Sara Wyn Kane (SK-6390)

To:   News America Incorporated
      d/b/a New York Post
      C/O Legal Department
      1211 Avenue of the Americas
      New York, New York 10036